ELISE MAGNIN et al., Respondents, *v.* WILLIAM B. DINSMORE, President, etc., Appellant.

Where a carrier by his contract limits his liability to a specified amount, if the value of the property is not stated by the shipper, and the goods are of greater value than the amount specified, silence alone, on the part of the shipper as to the real value, although there be no inquiry by the carrier and no artifice to deceive, is fraud in law which discharges the carrier from liability for ordinary negligence.

Where the shipper accepts carriage upon the terms of a limited liability, silence is the same as an assertion of little value; and the carrier is not only thereby deprived of his adequate reward, but is misled as to the degree of care and security which he should provide.

As to whether, in such case, the carrier will be relieved where his acts amount to a misfeasance or abandonment of his character as carrier, *quære.*

Where an owner of goods ships them consigned to another, giving the consignee an option to take and pay for them at a price fixed or return them, in an action against the carrier for their loss, the measure of damages is not the market value at the place of destination, but, at most, the price fixed with interest from a day when the goods would, in the usual course of carriage, have reached the consignee and have been accepted.

(Argued February 8, 1875; decided May 25, 1875.)

APPEAL from judgment of the General Term of the Superior Court of the city of New York, affirming a judgment in favor of plaintiffs entered upon a verdict.

This action was brought against defendant, as president of the Adams Express Company, to recover the value of a package of watches and watch-keys delivered to that company for transportation, consigned to J. E. Merriman & Co., Memphis, Tennessee.

The receipt given by the company contained this clause: "If the value of the property above described is not stated by the shipper, the holder hereof will not demand of the Adams Express Company a sum exceeding fifty dollars for the loss or detention of or damage to the property aforesaid." Plaintiffs sent to the consignees a bill of the goods with prices, amounting in all to $1,491.50, accompanied by a letter advis-

ing of the shipment to them for selection. Plaintiff's evidence tended to show that the goods were not delivered, but that the box which contained them was afterward found empty at Gowanus, Long Island, and that their value in Memphis would have been from $2,300 to $2,500. No statement of value was made at the time of shipment. Defendant gave evidence tending to show that a greater price would have been charged for transportation had the true value been stated; also that the package would have been put in the money and valuable package department, the packages in which were transported in safes locked and sealed, while where no value was stated it went in the freight department where such precautions were not taken. Defendant's counsel requested the court to charge that it was plaintiffs' duty, at the time of the delivery of the package, under the terms of the contract, to state its value, if they desired, in case of loss, to recover over fifty dollars; that the non-disclosure was a fraud on the company which prevented a recovery. The court refused so to charge and defendant's counsel duly excepted. The court submitted to the jury the question as to whether, in fact, there was any fraud or concealment; and also charged, in substance, that the measure of damages was the value of the package at the place of destination, to which defendant's counsel duly excepted.

Further facts appear in the opinion.

*Chas. M. Da Costa* for the appellant. The goods being of greater value than the amount specified in defendant's receipt, plaintiffs' silence as to their real value, although there was no inquiry by defendant and no attempt to deceive, was a fraud in law which discharged defendant from liability for ordinary negligence. (*Tyly* v. *Marrice*, Carth., 458; *Gibbon* v. *Paynton*, 4 Burr., 2298; *Clay* v. *Willan*, 1 H. Black., 298; *Izett* v. *Mountain*, 4 East, 371; *Nicholson* v. *Willan*, 5 id., 507; *Harris* v. *Packwood*, 3 Taunt.; *Bignold* v. *Waterhouse*, 1 M. & S., 255; *Alfred* v. *Horne*, 3 Stark., 136; *Down* v. *Fromont*, 4 Camp., 40; *Beck* v. *Evans*, 16

East, 244; *Batson* v. *Donovan,* 4 B. & Ald., 18; *Duff* v. *Budd,* 6 Moore, 469; *Brooke* v. *Pickwick,* 4 Bing., 220; *Sleat* v. *Flagg,* 5 B. & Ald., 342; *Thorogood* v. *Marsh,* Gow., 105; *Ellis* v. *Turner,* 8 T. R., 531; *Birkett* v. *Willan,* 2 B. & Ald., 356; *Bodenham* v. *Bennett,* 4 Price, 31; *Hinton* v. *Dibbin,* 2 Q. B. [Ad. & El.] [N. S.], 646; *Peek* v. *N. S. R. Co.,* 10 H. of L. Cas., 499, 511, 514; *Orange Co. Bk.* v. *Brown,* 9 Wend., 88, 115; *Pardee* v. *Drew,* 25 Wend., 459–461; *Richards* v. *Wescott,* 2 Bosw., 589–605; S. C., 7 id., 6; *G. N. R. Co.* v. *Shepherd,* 14 E. L. and Eq., 367–370; *Warner* v. *W. Tr. Co.,* 5 Robt., 490; *Stoneman* v. *Erie R. Co.,* 52 N. Y., 429, 433.) The facts of the case and not the plaintiffs' intent constituted the fraud. (*Mason* v. *Lord,* 40 N. Y., 476, 484; *Hackford* v. *N. Y. C., etc., R. R. Co.,* 53 id., 654; *Appleby* v. *Astor Ins. Co.,* 54 id., 253; *Getty* v. *Devlin,* id., 404; *Richards* v. *Wescott,* 7 Bosw., 6.) Plaintiffs' negligence could not be cured by negligence on the part of defendant. (*Shope* v. *Webb,* 1 T. R., 734.) No title to the goods passed to Merriman & Co. (*Thompson* v. *Fargo,* 49 N. Y., 188.) Plaintiffs could recover as damages only the invoice price of the goods, or the market value in New York. (*Bridge* v. *Austin,* 4 Mass., 115; *Lakeman* v. *Grinnell,* 5 Bosw., 632.) Declarations of agents to bind their principals must be made not only during the continuance of the agency, but at the very time of the transaction in question. (*Anderson* v. *R., W. and O. R. R. Co.,* 54 N. Y., 334; *Penn. R. R. Co.* v. *Books,* 57 Penn., 339; *Sweetland* v. *Tel. Co.,* 27 Iowa; *Pratt* v. *O. and L. C. R. R. Co.,* 102 Mass., 557; *N. W. U. P. Co.* v. *Clough,* 11 Alb. L. J., 15.)

*C. Bainbridge Smith* for the respondents. Defendant was bound to prove that the loss occurred from causes by which he exempted himself from liability. (*So. Ex. Co.* v. *Moon,* 3 Mo., 822; *Simmons* v. *Law,* 3 Keyes, 217.) A failure to deliver by a common carrier is *prima facie* evidence of negligence. (*Burnell* v. *N. Y. C. R. R. Co.,* 45 N. Y., 185;

*Bostwick* v. *B. and O. R. Co.*, id., 712 ; *Lamb* v. *C. and A. T. Co.*, 46 id., 271 ; *Curtis* v. *R. and Syr. R. Co.*, 18 id., 534 ; *Mann* v. *Page*, 40 Vt., 326 ; *Turney* v. *Wilson*, 7 Yerg., 340 ; *Whiteside* v. *Russell*, 8 W. & S., 44 ; *N. J. S. Nav. Co.* v. *Mer. Bk.*, 6 How. [U. S.], 423 ; *R. R. Co.* v. *Lockwood*, 17 Wall., 357.) So far as the contract of a common carrier is special the common-law liability is qualified, but in all other respects it remains. (*Simmons* v. *Law*, 3 Keyes, 217 ; *Guillaume* v. *Ham. and P. Co.*, 42 N. Y., 212 ; *Steinweg* v. *Erie R. Co.*, 43 id., 123 ; *Hooper* v. *Wells, Fargo & Co.*, 27 Cal., 11 ; Story on Bail., § 557 ; Ang. on Com. Car., § 220.) If the loss was occasioned through defendant's negligence he was answerable for the whole value of the goods. (*Wescott* v. *Fargo*, 6 Lans., 319 ; *Am. Ex. Co.* v. *Sands*, 55 Penn., 140 ; *Kallman* v. *U. S. Ex. Co.*, 3 Kans., 205 ; *So. Ex. Co.* v. *Newby*, 36 Geo., 635 ; *Adams Ex. Co.* v. *Haynes*, 46 Ill., 89 ; *Vroman* v. *Am. M. U. Co.*, 5 N. Y. S. C., 22.) No presumption will be indulged in in favor of common carriers exempting them from common-law liability. (*Edsall* v. *C. and A. Co.*, 50 N. Y., 661 ; *Wescott* v. *Fargo*, 6 Lans., 328 ; *Hooper* v. *Wells*, 27 Cal., 11.) If the loss occurred through gross negligence, the notice did not exempt defendant from liability for the whole value of the goods, although plaintiffs did not disclose their value. (*Batson* v. *Donovan*, 4 B. & Ald., 21 ; *Sleat* v. *Flagg*, 5 id., 342 ; *Garnett* v. *Willan*, id., 53 ; *Duff* v. *Budd*, 6 Moore, 469 ; *Brooks* v. *Pickwick*, 4 Bing., 220 ; *Brodenham* v. *Bennett*, 4 Price, 31 ; *Ellis* v. *Turner*, 8 T. R., 531 ; *Beck* v. *Evans*, 16 East, 244 ; Edwds. on Bail., 483, 484.) The measure of damages is the value of the goods at their place of destination where they should have been delivered. (*Sturges* v. *Bissell*, 46 N. Y., 462 ; *Wood* v. *N. Y. C. R. R. Co.*, 47 id., 29 ; 3 Pars. on Con., 196.)

FOLGER, J. There was a contract between the plaintiffs and the defendant, that if they did not state to it the value of the property shipped, they would not demand of it a

sum exceeding fifty dollars for the loss or detention thereof. (*Magnin* v. *Dinsmore, Prest., etc.,* 56 N. Y., 168.)   This contract did not, *per se,* excuse the defendant from liability for a loss arising from its negligence.   (Id.)   Thus we have heretofore held in this case.

At the trial, the rulings in which are now under review, the jury found negligence in the defendant, and that the loss arose therefrom.   The judgment of the court above cited as to legal liability, and the finding of the jury as to the facts, have thus concurred in favor of the plaintiffs.   But the judgment of the court then given was only upon the questions then presented.   Other questions now arise.   The defendant now insists that the imposition and deceit upon it, of the plaintiffs, amounting to fraud, relieved it from liability for the loss.   It was the duty of the plaintiffs not to practice imposition and deceit upon the defendant so as to add to its risk and to lessen its care and diligence.   (*Orange County Bk.* v. *Brown,* 9 Wend., 116.)   Though the duty of a common carrier, and the rigorous liability which is upon him at common law, arises principally from the public employment which he exercises (*Coggs* v. *Barnard,* 2 Ld. Ray., 917, 918; per Ld. HOLT, C. J., in *Lane* v. *Cotton,* 12 Mod., 485; Story on Bailm., § 549); yet his hire and reward also enter therein, and he has a right that his compensation shall be in measure with the risk he takes, and that he shall not be subject to unknown hazards.   (9 Wend., *supra.*)   The defendant insists that there was a fraud wrought upon it by the plaintiffs, in their failure to disclose the real value of the package and the nature of the contents; that the silence of the plaintiffs, and the alleged deceptive form, dimensions and general appearance of the package, were an imposition and deception.   A shipper may become chargeable with fraud upon a carrier, through imposition and deception, as well when he is silent as when he speaks that which is untrue. A neglect to disclose the real value of a package, and the nature of its contents, if, therewith, there is that in its form, dimensions and other appearance designed, and even if not

designed, if fitted, to throw the carrier off his guard, will be conduct amounting to the fraud now spoken of. The intention to impose upon the carrier is not material; it is enough if such is the practical effect of the conduct of the shipper. (*Pardee* v. *Drew*, 25 Wend., 459.) This question, too, was passed upon by the jury, at the last trial, as one of fact. Under the instructions of the court they found that there was not, upon the part of the plaintiffs, either active fraud or concealment, neither in the way in which the parcel was delivered to the carrier, nor in what was said or left unsaid at the time of the delivery, nor in the character of the package, as to the way in which it was inclosed and sealed. The defendant now urges, and did then urge, that the question is not one of fact for a jury, but of law for a court, and that the plaintiffs should be nonsuited for concealment of the true value of the package. An examination of the testimony for the facts of the case, has brought me to the conclusion that there is no proof of fraudulent concealment of value by the plaintiffs, unless their silence be such concealment. If the claim of the defendant is to be upheld, it is on the ground that silence alone, as to real value, is conclusive evidence of that deception and imposition which works fraud upon a carrier, and relieves him of his liability. Where there is no special contract limiting the common-law liability of the carrier, nor any notice so specially brought home to the knowledge of the shipper as to have that effect, the shipper is not bound to disclose the value of the goods, unless he is asked thereof by the carrier; but the carrier (for proper reasons, *Crouch* v. *L. and N. W. Railway Co.*, 14 C. B., 255) has a right to make inquiry and to have a true answer, and if he is deceived by a false answer given, he will not be responsible for any loss. If, however, the carrier makes no inquiry, and no artifice is used to mislead him, he is responsible for loss, however great may be the value. Such is stated in Story on Bailments (§ 567), to be the better opinion, and the cases there cited sustain the text. Where there is a special contract limiting liability, or other thing tantamount thereto,

it is otherwise. The case of *Batson* v. *Donovan* (4 Barn. & Ald., 21), is, perhaps, the strongest which can be cited, and ,the reasons for the rule are there well stated. There the shipper knew of the notice given by the carrier, limiting his liability. The package left for carriage was a box, properly directed, and with the name of the owners upon it. I infer that the business of the owners, as bankers, was known to the carrier. The box was locked and corded, though not sealed. It contained bills, checks and notes, to over £4,000 in value. The carrier did not know what it contained, nor that the contents were of great value ; nor was any thing said to him thereof. No more was said to him than : "It is the box for New Castle." These are all the facts stated in the report ; but it is not probable that any circumstance is omitted, which would have made for the carrier, or which would have materially changed the aspect of the case as presented in the book. The shipper's counsel, *arguendo*, said : "Here is no imputation of fraud ; negligence in the plaintiffs or their servants, in not communicating the value of the parcel, is alone insinuated." BEST, J., states his protest "against what I think a new principle in the law relative to carriers, viz. : That the owner of a parcel of value, such parcel having nothing in its appearance indicative of its contents being of small value, is bound, unasked by the carrier, to state what it is worth ;" "I cannot consider the non-communication of the contents of a box as any thing like fraud ;" "this is a case of silence only." He was the sole dissentient judge, but his statement of the facts is not questioned by those whose opinions prevailed. The case (*Batson* v. *Donovan*), must be taken as one of special acceptance by the carrier, and of silence only, as to value, by the shipper. The facts of the case now here cannot be stated any more favorably for the plaintiffs in it, than that there was a special acceptance by the defendant, and that there was only silence on their part. In *Batson* v. *Donovan*, it is true, the case was left to the jury to say, "whether the plaintiffs dealt fairly by the defendants in not apprising them that the

box contained articles of value." But the consideration of the rule *nisi* for a new trial brought up the question, whether, as matter of law, the facts of a limited liability by notice, and of silence as to value, were enough to debar the shipper of a recovery. A majority of the court adjudged that they were; that by delivery without information the shipper held the package out to the carrier as an ordinary article, which he would have no objection to take as of course ; that it was the duty of the shipper, not to deliver as ordinary goods, but to inform of nature and value; that in point of law it was a concealment, and fraud and deceit in law, not to do so. Besides, there was a question for the jury, also, whether the defendant was not chargeable with *gross* negligence in their carriage of the parcel. I have dwelt upon the case cited, as it is so like this in its facts; as it was much considered by the court, for the dissent was intelligent, vigorous and persistent, and the judgment not carelessly arrived at; and as it has been often cited at the bar and from the bench, acquiesced in by courts and text-writers, sometimes with and sometimes without hesitation, and seems never to have been reversed or overruled. Seven years afterward the dissenting judge still kept up and expressed his dissent (*Brooke* v. *Pickwick*, 4 Bing., 218), from which it appears that the adjudication remained then unchanged. Nor was it without precedents, tending strongly to the same end. (See *Clay* v. *Willan*, 1 Hy. Blk., 298 ; *Yate* v. *Willan*, 2 East, 128 ; *Izett* v. *Mountain*, 4 id., 371 ; *Nicholson* v. *Willan*, 5·id., 507, and others might be cited.) It is not too much to say that this rule, and certain kindred rules, became so much fixed as the law, by these and other decisions, as to lead to an enactment by Parliament, restoring to some extent the strict operation of the common-law liability, so far as it relates to carriers by land. (See Statutes, 11 Geo. IV and 1 Wm. IV, c. 68.) The same principle has been asserted in this State. (*Orange County Bk.* v. *Brown, supra.*) There Nelson, Ch. J., states it thus: "The carrier in such case is not bound to make inquiry, and if the owner omits

to make known the value, he is liable only to the amount mentioned in his notice, or not at all, according to the terms of his notice." It is true that in that case the carrier had not given notice to the owner, nor otherwise made express special acceptance. But he was a carrier of passengers only (so far as that owner was concerned), and thus there was a practical limited acceptance, for he was not, in the absence of information of value or nature of the goods committed to him, to be held to a carrier's duty and liability, further than for a traveler's ordinary baggage. (*Gt. North. R. W. Co.* v. *Sheperd*, 14 Eng. L. and Eq., 367.) It is true, also, that the case 9 Wendell (*supra*) is one of more than silence merely as to value, as the large sum of money, for which it was sought to charge the carrier, was placed in an ordinary traveling trunk, thus, to a degree, making an affirmation of slight value. So that this utterance of the learned judge may not have the force of a binding authority, while it has all the weight which his high judicial repute can give it. It is to be observed, too, that he cites as authority for his assertion *Batson* v. *Donovan; Thorogood* v. *Marsh* (Niel Gower, 105); and *Marsh* v. *Horne* (5 Barn. & Cress., 322). (See, also, *Pardee* v. *Drew, supra; Warner* v. *West. Trans. Co.*, 5 Robt., 490; *Richards* v. *Westcott*, 2 Bosw., 589; S. C., 7 id., 6.) The opinion in *Railroad Co.* v. *Lockwood* (17 Wall. [U. S.], 357–380), recognizes the justice and reasonable character of the rule. Nor is there wanting an analogy in the law for this doctrine. If an applicant for marine insurance, though without design to deceive, and only by failure to mention, conceal a fact which it is material for the insurer to know as increasing the risk he is asked to assume, and thereby affecting the rate of premium which he would charge, the contract of the insurer may be avoided. (2 Duer on Ins., 380, *et seq.*) And the reason of the thing is on the same side. As a general rule, the carrier, because of his public employment, must take and carry that which is offered to him therefor. But he ought to have a reasonable reward for the carriage. As the risk of carriage of a parcel of much value is greater than of one of mean value,

the reward for it should be greater. And as the risk is greater, so should the care be greater, and so it will be if the value be known. Thus it appears that the carrier should know of the value of the package which he is called upon to carry, that he may exact his due reward, and take due care. (See *Riley* v. *Horne*, 5 Bing., 217.) As has been stated, in the absence of agreement for a limited liability, it is the duty of the carrier to make all needful inquiry as to value. But when the shipper agrees with the carrier for a limited liability, he thereby expresses to the latter his estimate of the risk to be run and of the care needed, and " holds out the package to him as an ordinary article, which he would have no objection to take as of course." The carrier is thereby put off his guard. The shipper might refuse to agree to a limited liability, and demand generally, carriage upon the common-law liability of the carrier; and then they deal at arms' length, and that would arouse the attention of the carrier; at least would put upon him the duty of inquiry. But accepting carriage upon the terms of a limited liability, the shipper indicates his judgment of the degree of the risk and of needed care; and his silence as to real value is the same as an assertion of mean value, thus keeping from the carrier his adequate reward; and, what is worse, misleading him as to the degree of care and security which he should provide. It is a concealment of an important fact in entering into the bargain to be made, such a concealment as amounts to a fraud in law upon the carrier; and where there is no dispute as to the material facts, as there is none in this case, it is a question of law for the court, and not of fact for the jury.

I conclude that the defendant is right in its claim, that the question of concealment of value, upon the undisputed facts of the agreement and of the silence of the plaintiffs, was one of law for the court, and not of fact for the jury; and that silence only as to value amounted to such an imposition upon the defendant, as would relieve it from a liability for the total value of the goods, unless something more in its conduct is shown than negligence to carry safely and to deliver promptly.

I wish to add here a remark, that when the words imposi-
tion, deception, fraud, are used, it is because they are found in
the books treating on this matter, and not as imputing to the
plaintiffs any motive or design inconsistent with complete
mercantile honor and fair dealing. It would be more accord-
ant with the idea meant to be conveyed, to use the language
suggested by reputable writers on insurance, and to say that
a concealment without design, is a failure to observe an implied
condition that the contract for carriage is free from misrepre-
sentation or concealment. (2 Duer Mar. Ins., 647 ; 1 Philips
on Ins., 279, § 537.) It is proper also to add, that while such
a concealment, under such a contract as there is in this case,
relieves the carrier from liability for a loss occurring from ordi-
nary negligence, we do not now hold that he will be thereby
thus relieved, where his acts or those of his servants have
amounted to a misfeasance or abandonment of his character
as carrier. (*Sleat* v. *Fagg*, 5 Barn. & Ald., 342.)

There are other questions raised by the argument made for
the defendant ; as to the measure of damages, and as to the
admission of evidence. As to the first, it seems clear that
the plaintiffs could not demand from the defendant more than
would have resulted to them had the defendant made safe car-
riage and prompt and correct delivery. In that case the plain-
tiffs would, at the farthest, have had from their consignees
payment for all the goods sent at the price to the consignees
fixed upon them by the plaintiffs. The sum of that price,
with interest thereon from a day when the goods should,
in usual course of carriage, have reached the consignees
and been accepted by them, will make the damage which
would naturally and proximately result to the plaintiffs.
Though a rule is sometimes stated thus : That the damages
are the value of the goods agreed to be carried and delivered
at the place and time of delivery ; that rule is but a branch
of the more general one, that the damages for a failure to
perform are a sum equal to the benefit which would have
resulted from a performance of a contract. (*Sturgess* v. *Bis-
sell*, 46 N. Y., 462.) When the owner and shipper of the

goods is himself to take the goods at the place of destination, and there sell them for his own account for what they will there bring, the market value there is the measure of his damages, because that would have been his benefit from performance of the contract. But every case is governed by its own facts; and here the price of the goods at the place of destination was fixed by the plaintiffs before they were committed to the carrier. Either that price was to be paid by the consignees or the goods were to have been returned to the plaintiffs at New York, where they would have been worth to them the market-price of them there. No other value to the plaintiffs could have been in the contemplation of both the contracting parties, nor any other damages than such as would result from a failure to obtain that value.

The evidence of the witness Byrd, objected to, seems to be of the declarations of one Woodward. If it be assumed that the latter is shown to have been an agent of the defendant, it does not appear when the declarations were made, or that they were part of the *res gestæ* accompanying the performance of any act or duty as agent. So much of the answer as relates to the declarations of Woodward was improperly received. The objection and exception cover more than this, and somewhat which does not appear objectionable, and perhaps they would furnish no ground of error, for that reason. As, for other causes, the judgment must be reversed, it is not of moment to consider them further.

The judgment must be reversed and a new trial ordered.

All concur.

Judgment reversed.